UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER GARCIA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY, Acting<br>Commissioner of Social Security,[1]<br><br>　　　　　　Defendant. | Case No.  1:23-cv-01593-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND**<br><br>(Docs. 14, 18) |

**Findings and Recommendations**

**INTRODUCTION**

Plaintiff Esther Garcia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act.  The matter is currently before the Court on Plaintiff's motion for summary judgment or remand and the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's motion for summary judgment and granting the Commissioner's request to affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on July 11, 2018. AR 336-37.[2] Plaintiff alleged she became disabled on May 9, 2018, due to heart disease, hypertension, diabetes, depression, transient ischemic attack, plantar fasciitis, spurs, thrombocytosis, memory loss, chronic headaches, and back conditions, including Tarlov Cyst and disc bulges. AR 192, 377. Plaintiff's application was denied initially and on reconsideration. AR 192-96, 200-204. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Bryan Henry issued an order denying benefits on July 31, 2020. AR 164-83. On May 13, 2022, the Appeals Council remanded the case for further proceedings. AR 188-190. After remand by the Appeals Council, and a new hearing, ALJ Henry issued an order denying benefits on November 17, 2022. AR 14-31, 38-68. Thereafter, Plaintiff sought review of the decision, which the Appeals Council denied, making the ALJ's November 17, 2022 decision the Commissioner's final decision. AR 1-5. This appeal followed.

### Hearing Testimony and Medical Record

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

### The ALJ's November 17, 2022 Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 17-31. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 9, 2018, her alleged onset date. AR 19. The ALJ identified the following severe impairments: coronary artery disease,

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

status post pacemaker implant; degenerative disc disease of the lumbar spine; Tarlov's cyst; degenerative joint disease of the left shoulder; trigger finger; diabetes mellitus with peripheral neuropathy in the bilateral hands and feet; bilateral hearing loss due to tinnitus; and obesity. AR 19-23. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 23-24.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that she could lift and carry 10 pounds occasionally, less than 10 pounds frequently, could sit for six of eight hours, and could stand and/or walk for two of eight hours. She could occasionally climb ramps and stairs, but could never climb ladders, ropes, and scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. She would need a sit/stand option approximately three times per hour and would be off task less than 5% of the time. She could occasionally reach overhead with the left upper extremity and could frequently handle and finger bilaterally. She could tolerate moderate noise, but must avoid loud background noise. She could never work around unprotected heights or dangerous machines. She could perform detailed but not complex tasks. AR 24-30. With this RFC, the ALJ determined that Plaintiff was capable of performing her past relevant work as an Admit Clerk as generally performed. AR 30-31. The ALJ therefore concluded that Plaintiff had not been under a disability from May 9, 2018, through the date of the decision. AR 31.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the

evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ erred at step two of the sequential evaluation by failing to find Plaintiff's mental impairments severe and by not including any related limitations in the RFC. (Doc. 14 at 3, 6.) Plaintiff also contends that the ALJ failed to properly evaluate the medical opinions of record in accordance with the prevailing rules and regulations. (*Id.* at 3, 7.)

### A. Step Two – Mental Impairment

Plaintiff contends that the ALJ erred by failing to find her mental impairments of depression and memory loss to be severe, asserting that her RFC should have included a limitation to simple, routine tasks. (Doc. 14 at 6-7.)

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

4

An impairment, or combination of impairments, can be found non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85–28, 1985 WL 56856 (Jan. 1, 1985); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988) (adopting SSR 85–28). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993). A claimant bears the burden of proving that an impairment is disabling. *Id.* (citation omitted).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill,* 869 F.3d 1040, 1048 (9th Cir. 2017), citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987). "It is not meant to identify the impairments that should be taken into account when determining the RFC . . . . The RFC . . . *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original). Any error in failing to include an impairment at step two is harmless if the ALJ considered any limitations imposed by the impairment in subsequent steps of the sequential evaluation. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."); *Morrison v. O'Malley*, No. 1:22-CV-01559-SKO, 2024 WL 21558, at *6 (E.D. Cal. Jan. 2, 2024) (explaining failure to include an impairment in the step two analysis is harmless if the ALJ considers the functional limitations that flow from said impairment in subsequent steps of sequential evaluation).

At step two of the five-step sequential evaluation, the ALJ here determined that Plaintiff suffered from the severe impairments of coronary artery disease, status post pacemaker, degenerative disc disease of the lumbar spine, Tarlov's cyst, degenerative joint disease of the left shoulder, trigger finger, diabetes mellitus with peripheral neuropathy in the bilateral hands and feet, bilateral hearing loss due to tinnitus, and obesity. AR 19-20. Plaintiff now contends that the ALJ erred by failing to find her mental impairments of depression and memory loss to be severe.

According to the record, the ALJ considered Plaintiff's mental impairments, including memory loss, anxiousness, and depression, at step two of the sequential evaluation. AR 21-22. In evaluating the severity those mental impairments, the ALJ assessed the degree of limitation in the four broad paragraph B areas of mental functioning set out in the regulations for evaluating mental disorders.

The ALJ found a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself. AR 21. The ALJ based this finding on (1) Plaintiff's hearing testimony, which lacked any indication that she was currently taking psychotropic medications; (2) the medical record, which revealed "little evidence of . . . formal mental health treatment such as therapy or other modalities;" and (3) evidence that Plaintiff routinely "denied or was negative for any mental health symptoms on more than one occasion." AR 21, citing AR 640 ("Negative for depression, hallucinations"); 655 ("denies anxiety/nerves, depression, sleep difficulties"); 799 ("No depression; No anxiety"). The ALJ also considered evidence that Plaintiff had "been observed as alert, oriented, and cooperative with appropriate mood and affect." AR 21, citing AR 661 ("alert and oriented to person, place, time, and situation" and "normal mood and affect"); 833 (alert and oriented; cooperative, appropriate mood and affect).

  Plaintiff makes two primary challenges to these findings, neither of which is persuasive. First, Plaintiff asserts that even the ALJ "noted that Plaintiff had been prescribed medications for her mental impairment." (Doc. 14 at 7.) While correct, Plaintiff appears to ignore the ALJ's further determination that Plaintiff's own testimony lacked any indication that she currently was taking such medications. AR 21. Plaintiff also appears to overlook the ALJ's finding that the medical record revealed little evidence of formal mental health treatment. Second, Plaintiff asserts that Defendant mischaracterized the record by stating "that the evidence showed Plaintiff routinely denied psychiatric symptoms" because the cited evidence refers to the review of symptoms from Plaintiff's cardiologist, not a denial by Plaintiff of the existence of her mental impairments. (Doc. 19 at 2.) However, as noted above, the cited evidence showed that Plaintiff "denied or was negative for any mental health symptoms on more than one occasion." AR 21, citing AR 640 ("Negative for depression, hallucinations"); 655 ("denies anxiety/nerves, depression, sleep difficulties"); 799 ("No depression; No anxiety").

  Plaintiff further contends that "the determination that her mental impairment was not severe is unsupported by substantial evidence" because the consultative psychological examiner, Dr. Michael Musacco, opined that Plaintiff had functional limitations. (Doc. 14 at 7) This contention also is not

persuasive. While Plaintiff correctly notes that Dr. Musacco identified functional limitations, she appears to ignore the ALJ's finding that Dr. Musacco's opinion was not persuasive. AR 22.

Relevant here, Dr. Musacco completed a consultative psychological examination in September 2018. AR 596-99. Plaintiff reported symptoms of sadness, depression, anxiousness, feeling antsy, racing thoughts, panic attacks, and memory issues. AR 597-99. Dr. Musacco noted that Plaintiff's medical difficulties "constitute her primary claim for disability." AR 597. On mental status examination, Plaintiff's affect was serious, her speech was organized and goal directed, and she appeared to be cooperative. AR 597. On psychological testing, Plaintiff's intelligence fell in the average to low average range and her memory fell in the average range without evidence of any relative weaknesses. AR 598-99 Dr. Musacco explained that psychological testing "revealed no evidence of significant deficits in her cognitive functioning" and she was a "good historian." AR 599. Dr. Musacco opined that Plaintiff was "capable of managing her funds independently" and appeared "capable of completing simple and repetitive work tasks." AR 559. He reiterated that Plaintiff's primary claim for disability revolved around her medical problems. AR 599.

The ALJ summarized Dr. Musacco's opinion and findings. AR 22. In evaluating Dr. Musacco's opinion, the ALJ considered the relevant factors of supportability and consistency as required by the regulations.[4] Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 404.1520c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); *Woods*, 32 F.4th at 792. As to supportability, the ALJ determined that Dr. Musacco's restriction to simple, repetitive tasks was not supported by his findings, "coupled with observations that [Plaintiff] was a good historian with

---

[4] As discussed later in this decision, the regulations applicable to Plaintiff's claims require the Commissioner to evaluate the persuasiveness of any medical opinion or prior administrative medical findings based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5). Of those, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(b)(2).

organized and goal directed speech." AR 22, 597, 599.  The ALJ further determined that Dr. Musacco did not provide much by way of explanation for the noted limitations; "rather, he noted that the claimant's primary problems stem from her physical issues, which is generally inconsistent with his assessed restrictions."  AR 22, 597, 599.  As to consistency, the ALJ found Dr. Musacco's opinion not consistent with the longitudinal record.  The ALJ explained that while Plaintiff reported memory issues and related problems, there remained "little evidence of cognitive deficits or consistent memory issues affecting her overall functioning."  AR 22.  The ALJ further noted that the records did not include "evidence of formal mental health treatment" nor did they indicate she was "precluded from performing more than simple, repetitive tasks."  AR 22.  Although Plaintiff argues that the ALJ's step two error is harmful based on Dr. Musacco's opinion, Plaintiff does not challenge the ALJ's evaluation of Dr. Musacco's opinion or the ALJ's finding that Dr. Musacco's opinion was not persuasive.  (*See* Doc. 14 at 7.)

Additionally, Plaintiff does not address the ALJ's additional consideration of the prior administrative medical findings from the state agency psychological consultants concluding that Plaintiff's mental impairments were non-severe.[5]  AR 21-22.  At the initial disability determination level, Dr. Preston Davis, the state agency consultant, found that Plaintiff had a mild limitation in interacting with others, but no limitations in the remaining paragraph B areas of mental functioning.  AR 21, 136.  Dr. Davis therefore determined that Plaintiff's mental impairments were non severe.  AR 136-38.

The ALJ evaluated Dr. Davis's findings considering the relevant factors of supportability and consistency.  As to supportability, the ALJ found some support for Dr. Davis's assessment, including reference to the claimant's subjective reports – panic attacks, anxiousness, feeling antsy, memory issues, and more – along with evidence of some abnormalities but otherwise little evidence of significant mental functioning deficits."  AR 21, 137-38.  As to consistency, the ALJ found the assessment "somewhat consistent" with the longitudinal record, which included "little evidence or

---

[5] Prior administrative medical findings are findings made by State agency medical and psychological consultants at a prior level of review based on their review of the evidence in the record.  20 C.F.R. § 404.1513(a)(5).

worsening symptoms, nor evidence that she pursued routine mental health treatment." AR 21. Nonetheless, the ALJ found this assessment only "somewhat persuasive" because of testimony at the hearing pertaining to Plaintiff's memory, which suggested "mild limitations in understanding, remembering, and applying information and concentrating, persisting, and maintaining pace as well." AR 21.

At the reconsideration level, state agency medical consultant Dr. Brady Dalton found mild limitations in all of the paragraph B areas of mental functioning. AR 153. Dr. Dalton therefore concluded that Plaintiff's mental impairments were non severe. AR 152-55. The ALJ evaluated Dr. Dalton's findings considering both supportability and consistency. As to supportability, the ALJ noted that Dr. Dalton cited to evidence that did not "establish a significant change in the claimant's functioning, noting that the finding at the initial level that the claimant's mental impairments were nonsevere is reasonable." AR 21, 155. The ALJ further noted that Dr. Dalton's additional mild findings in understanding, remembering, and applying information and concentrating, persisting, and maintaining pace were "better supported by the claimant's subjective reports of depression, anxiety, and memory issues as well as some testing that suggests no more than mild effects on her functioning." AR 21, citing AR 597-99. However, the ALJ determined that the consultant's finding of a mild limitation in adapting and managing oneself was "not well supported, particularly given the claimant's reported ability to perform self-care and routine activities of daily living." AR 21-22, 154. Additionally, in considering consistency, the ALJ determined that despite testimony at the hearing that Plaintiff's mother provided assistance, this appeared to be "attributed to her physical symptoms, and there remain[ed] little evidence of any limitations in adapting and managing oneself." AR 22. Otherwise, the ALJ determined that Plaintiff's testimony regarding memory issues coupled with other evidence of record supported mild limitations in the other paragraph B areas of mental functioning. The ALJ therefore considered that, apart from the mild finding in adapting and managing oneself, Dr. Dalton's assessment was "generally persuasive." AR 22.

The ALJ also considered the prior administrative medical findings of Dr. Ellen Gara, which were rendered in May 2019. AR 22, 672-82. Dr. Gara determined that Plaintiff's mental impairments were not severe, finding that Plaintiff had mild restriction of activities of daily living, mild difficulties

in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation.  AR 672, 680.  The ALJ summarized these findings and evaluated Dr. Gara's opinion considering the relevant factors of supportability and consistency.  AR 22.  As to supportability, the ALJ explained that the findings were "generally supported" by Dr. Gara's reference to the evidence of record, including Plaintiff's subjective reports, test results, and the general lack of formal mental health treatment she had received.  AR 22, 682.  As to consistency, the ALJ acknowledged that Dr. Gara's assessment was based on paragraph B areas that were no longer in effect, but nevertheless found them generally consistent with the longitudinal record.  For instance, the ALJ considered that Plaintiff testified to ongoing memory issues, but there was little evidence of any more than mild effect on her functioning.  The ALJ therefore found Dr. Gara's assessment generally persuasive.  AR 22.

As discussed, the ALJ evaluated the prior administrative medical findings based on the relevant factors of supportability and consistency.  Plaintiff does not challenge the ALJ's evaluation of these prior administrative medical findings.  (*See generally* Doc. 14.)  While the ALJ found them to be of varying degrees of persuasiveness, they support the ALJ's determination that Plaintiff's mental impairments were nonsevere.  *See*, *e.g.*, *Correia v. Comm'r of Soc. Sec.*, No. 220CV01139JDPSS, 2023 WL 2058894, at *4 (E.D. Cal. Feb. 16, 2023) (concluding ALJ supported finding that plaintiff's mental impairments were non-severe with substantial evidence from the record, based primarily on the medical opinions of a consultative examining psychologist and two state agency psychiatric consultants).

Based upon the foregoing, the Court finds the ALJ's determination that Plaintiff's mental impairments were non severe is supported by substantial evidence and free of reversible error.  Even if the Court were to accept *arguendo* that the ALJ committed an error at step two, any such error would be harmless because the ALJ considered the effects of Plaintiff's mental impairments at subsequent steps of the sequential evaluation.  In particular, the ALJ explicitly confirmed that the RFC assessment "reflects the degree of limitation . . . found in the "paragraph B' mental function analysis."  AR 23.  Further, when developing Plaintiff's RFC, the ALJ determined that although Plaintiff's mental impairments were "nonsevere," he accommodated Plaintiff's mental impairments by limiting her to

"detailed but not complex tasks due to the combination of her reported memory loss as well as any symptoms of pain." AR 30. Because the ALJ considered Plaintiff's mental impairments when determining an appropriate RFC, any claimed error at step two would be harmless. *See Kessler v. O'Malley*, No. 2:23-cv-01416 AC, 2024 WL 1908078, at *5 (E.D. Cal. May 1, 2024) (finding any error in failing to identify hip impairment as severe at step two to be harmless where ALJ considered the impact the impairment would have when determining an appropriate RFC and considered the recommendations by doctors, the testimony of plaintiff, and the medical records that pertained to the impairment and the impact it caused); *Cory T. T. v. Kijakazi*, No. 8:21-CV-01228-JC, 2022 WL 4109454, at *10 (C.D. Cal. Sept. 8, 2022) (finding any error from failing to find plaintiff's mental impairments severe at step two harmless where ALJ "reportedly considered all of plaintiff's symptoms in determining plaintiff's residual functional capacity"); *Placensia Rodriguez v. Saul*, No. 1:19-cv-00016-SKO, 2020 WL 528851, at *10 (E.D. Cal. Feb. 3, 2020) (concluding any asserted error in finding mental impairments non-severe harmless because ALJ proceeded to consider the effects of plaintiff's mental impairments when formulating RFC).

### B. Evaluation of Medical Opinion

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion of her primary care provider, Dr. Gary G. Morasca. (Doc. 14 at 8-10.)

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). As previously explained, the Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792  "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* (internal citations omitted).

On November 26, 2018, Dr. Morasca completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form.  AR 614-19.  Dr. Morasca opined that Plaintiff could lift and carry up to 10 pounds occasionally, could sit 3 hours at one time, stand 30 minutes at one time, and walk 30 minutes at one time.  She could sit for a total of 7 hours in an 8-hour workday, stand 1 hour in an 8-hour workday, and could walk 1 hour in an 8-hour workday.  AR 614-15.  She could use her hands only occasionally for reaching (overhead and all other), handling, fingering, feeling, and push/pull, due to trigger finger on the third fingers of her left and right hands.  AR 616.  She could occasionally operate foot controls with her right foot, and continuously operate such controls with her left foot.  AR 616.  She could occasionally climb stairs and ramps, stoop, kneel, and crouch, but could never climb ladders or scaffolds, balance, or crawl.  AR 617.  Dr. Morasca further opined that Plaintiff could never tolerate exposure to unprotected heights or dust, odors, fumes, and pulmonary irritants, and could occasionally tolerate exposure to operating a motor vehicle, humidity and wetness, extreme cold, extreme heat, and vibrations, and could frequently tolerate moving mechanical parts.  AR 618.  Plaintiff also could shop, travel without a companion for assistance, ambulate without using a wheelchair, walker, or 2 canes or 2 crutches, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed herself, care for her personal hygiene, and sort, handle, or use paper/files.  AR 619.  Dr. Morasca indicated that the opined limitations were first present in October 2008.  AR 619.

The ALJ summarized Dr. Morasca's opinion and found it not persuasive.  AR 28-29.  The ALJ reasoned as follows:

> In support of this assessment, Dr. Morasca cited to the claimant's multiple impairments, including her back pain and tarlov cyst as well as her trigger finger, neuropathy, coronary artery disease, and more (Ex 9F). Despite this, there is no narrative explanation to provide a nexus between the claimant's impairments and the overly restrictive functional limitations identified (Ex 9F). For example, the claimant has been documented with trigger finger and other issues with respect to her hands; however, this does not rise to the level of occasional manipulative restrictions (Ex 9F p. 4). Treatment notes from Dr. Morasca do include documentation of the claimant's ongoing issues but are otherwise unremarkable and do not support the conclusory assessments (Ex 10F; 13F). As such, this assessment is not consistent with the longitudinal record. With respect to the noted manipulative restrictions, these are not consistent with other findings, including that she has 4+/5- out of 5 grip strength in her hands and little other evidence of ongoing deficits (Ex 7F; 20F). Similarly, the restrictions with respect to operation of foot controls are not supported, particularly given evidence of the 90% improvement with treatment for her nonsevere plantar fasciitis as well as observations of normal gait with the ability to stand on heels and toes (Ex 1F; 7F). While there is evidence of treatment and other issues in connection with her cardiac impairments that do support a range of sedentary work with additional nonexertional restrictions, this assessment contains a number of overly restrictive limitations that are not consistent with evidence of the claimant's treating history. In addition, Dr. Morasca noted that these limitations have been present since 2009, which is not consistent with the claimant's own allegations and her work history (Ex 9F p. 7). Therefore, this assessment is not persuasive.

AR 28-29.

Plaintiff argues that "the ALJ's explanation does not provide sufficient clarity to allow a reasonable person to understand which evidence, if any, renders this opinion unpersuasive." (Doc. 14 at 8-9.) The Court disagrees.

Plaintiff only challenges the ALJ's evaluation of Dr. Morasca's opinion relative to the opined occasional manipulative limitations. (Doc. 14 at 9-10.) The ALJ found that those limitations were neither supported nor consistent with the record. As to supportability, the ALJ correctly noted that Dr. Morasca offered "no narrative explanation to provide a nexus between the claimant's impairments and the overly restrictive functional limitations identified." AR 28, 614-19. And while Plaintiff had trigger finger and other issues with respect to her hands, these did not rise to the level of occasional manipulative restrictions. AR 28, 616. The ALJ also determined that Dr. Morasca's treatment notes documented Plaintiff's ongoing issues but were otherwise unremarkable and did not support the conclusory assessments. AR 28. In making this determination, the ALJ cited Dr. Morasca's treatment notes, which did not include objective evidence supporting manipulative limitations due to trigger

finger or issues with Plaintiff's hands. AR 28, citing AR 626-35, 650-52.  Plaintiff claims that the ALJ did not cite to records indicating Plaintiff was less limited than Dr. Morasca opined and only cited to the opinion itself.  But as demonstrated, the ALJ cited Dr. Morasca's own treatment notes, which were not supportive of Dr. Morasca's manipulative limitations.

As to consistency, the ALJ found Dr. Morasca's opinion "not consistent with the longitudinal record."  AR 28.  Specifically, the ALJ considered that Dr. Morasca's manipulative restrictions were "not consistent" with other findings, including that Plaintiff had "4+/5- out of 5 grip strength in her hands and little other evidence of ongoing deficits."  AR 28, citing AR 601-05, 788-91 (normal sensation, normal reflex, 5/5 motor strength).  Plaintiff contends that she was "noted to have decreased grip strength (Ar. 604)," which supports Dr. Morasca's opinion. (Doc. 14 at 9.)  However, the ALJ also noted this same finding from the consultative internal medicine evaluation, which revealed only slightly reduced grip strength ("4+ to 5-/5").  AR 28, 604.  The ALJ reasonably concluded that such an incremental decrease in grip strength was not consistent with the occasional manipulative limitations opined by Dr. Morasca.  *See Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." 1108 (9th Cir. 2018).  Plaintiff also relies on documentation of "trigger fingers" (AR 604) to demonstrate error, but the mere existence of an impairment is not sufficient proof of disability.  *See Matthews*, 10 F.3d at 680.

Plaintiff additionally asserts that "peripheral neuropathy in her hands and feet (Ar. 19-20) . . . would further support the conclusion that Plaintiff had manipulative limitations."  (Doc. 14 at 9.)  This assertion is unpersuasive for two main reasons.  First, Dr. Morasca did not cite neuropathy in Plaintiff's hands as a reason for the occasional manipulative limitations.[6]  AR 616.  Second, the ALJ did conclude that Plaintiff had manipulative limitations, albeit not the occasional manipulative limitations opined by Dr. Morasca.  *See* AR 24 ("The claimant . . . can frequently handle and finger bilaterally."); 30.

---

[6] Dr. Morasca's only reference was to neuropathy was to identify right "foot" neuropathy.  AR 616.

Finally, the ALJ considered Dr. Morasca's notation that the opined limitations had been present since 2009, which was not consistent with Plaintiff's own allegations and her work history. AR 29, 619.  Plaintiff does not challenge the ALJ's determination, and the record reflects that Plaintiff testified in July 2020 that her trigger finger and hand issues started a couple years earlier.  AR 103. Further, Plaintiff worked in patient registration for approximately 34 years through 2018, at job in which she admits required frequent manipulation.  AR 30, 84, 93 (testifying that she stopped working in 2018), 378; Doc. 14 at 10.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment or remand (Doc. 14) be denied.
2. The Commissioner's request to affirm the agency's determination (Doc. 18) be granted.
3. The Clerk of this Court be directed to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Esther Garcia.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 28, 2024**           /s/ *Barbara A. McAuliffe*
                                                      UNITED STATES MAGISTRATE JUDGE