**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTHER GARCIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LELAND DUDEK,<br>Acting Commissioner of Social Security,[1]<br><br>　　　　Defendant. | Case No.: 1:23-cv-1593 JLT BAM<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S REQUEST TO AFFIRM THE ADMINISTRATIVE DECISION, AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT<br><br>(Docs. 14, 18, and 20) |

　　　　Esther Garcia seeks judicial review of a final decision denying her application for disability insurance benefits under Title II of the Social Security Act. (Docs. 1, 14.) Plaintiff asserts the decision is not supported by substantial evidence because the ALJ erred in evaluating her mental impairments and the medical opinion of her primary care provider. (*See generally* Doc. 14.) Plaintiff requests the matter be remanded for further administrative proceedings. (*Id.* at 7, 10.) The Commissioner asserts substantial evidence supports the ALJ's findings. (Doc. 18 at 4-13.) For the reasons set forth below, Plaintiff's appeal is denied and Commissioner's request to affirm the administrative decision is granted.

///

---

[1] Leland Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit.

## I.     Decision of the ALJ

The ALJ evaluated Plaintiff's application using the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. (Doc. 11-2 at 24-36.) First, the ALJ determined Plaintiff did not engage in substantial gainful activity after her alleged onset date of May 9, 2018. (*Id.* at 24.) Second, the ALJ found Plaintiff's severe impairments included: "coronary artery disease, status post pacemaker implant; degenerative disc disease of the lumbar spine; tarlov's cyst; degenerative joint disease of the left shoulder; trigger finger; diabetes mellitus with peripheral neuropathy in the bilateral hands and feet; bilateral hearing loss due to tinnitus; and obesity." (*Id.* at 24-25.) The ALJ noted Plaintiff "reported mental health symptoms such as memory loss, anxiousness, and depression," but found Plaintiff's mental impairments were "nonsevere" because they "cause[d] no more than 'mild limitation in any of the functional areas and the evidence does not otherwise indicate there is more than a minimal limitation in the claimant's ability to do basic work activities." (*Id.* at 27, emphasis in original.)

At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 11-2 at 28-29.) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. She can sit for six of eight hours, and can stand and/or walk for two of eight hours. The claimant can occasionally climb ramps and stairs and can never climb ladders, ropes and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must have a sit/stand option approximately three times per hour and will be off task less than 5% of the time. The claimant can occasionally reach overhead with the left upper extremity, and can frequently handle and finger bilaterally. She can tolerate moderate noise and must avoid loud background noise. The claimant can never work around unprotected heights or dangerous machines. She can perform detailed but not complex tasks.

(*Id.* at 29.) With this residual functional capacity, the ALJ determined at step four that Plaintiff was "capable of performing past relevant work as an Admit Clerk as generally performed" in the national economy. (*Id.* at 35.) Therefore, the ALJ concluded Plaintiff was not disabled. (*Id.* at 36.)

## II.    Issues Raised by Plaintiff

Plaintiff asserts, "The ALJ's decision is unsupported by substantial evidence as he failed to find Plaintiff's mental impairment severe at Step 2 and did not include any limitations in the RFC reflective of Plaintiff's limitations related to her impairment." (Doc. 14 at 6 [emphasis omitted]; *see*

*also id.* at 6-7.) In addition, Plaintiff contends that "[t]he RFC determination is unsupported by substantial evidence as he failed properly evaluate the medical opinions" from her primary care provider, Dr. Morasca, "in accordance with the prevailing rules and regulations." (*Id.* at 7 [emphasis omitted]; *see also id.* at 7-10.) Thus, Plaintiff contends remand is appropriate. (*Id.* at 7, 10.)

### III.  **Findings and Recommendations of the Magistrate Judge**

The magistrate judge found Plaintiff's arguments regarding her mental impairments were not persuasive. (Doc. 20 at 6.) The magistrate judge noted Plaintiff ignored the ALJ's determination that her "own testimony lacked any indication" that she was currently taking medication for her mental impairment, despite receiving prescriptions for such, and there was "little evidence of formal mental health treatment." (*Id.*) In addition, the magistrate judge observed the evidence the ALJ cited "showed that Plaintiff 'denied or was negative for any mental health symptoms on more than one occasion.'" (*Id.*, citing AR 21 [Doc. 11-2 at 26].) Although Plaintiff relied upon the limitations identified by Dr. Michael Musacco to show the severity of her mental impairments, the magistrate judge found Plaintiff "appears to ignore the ALJ's finding that Dr. Musacco's opinion was not persuasive," and did not challenge the ALJ's analysis regarding this opinion. (*Id.* at 7; *see also id.* at 6-8.) The magistrate judge found substantial evidence supported the step two determination, including opinions from several other physicians, which Plaintiff did not challenge. (*Id.* at 8-10.) The magistrate judge also determined any error at step two was "harmless because the ALJ considered the effects of Plaintiff's mental impairments at subsequent steps of the sequential evaluation." (*Id.* at 10.)

The magistrate judge found the ALJ properly considered the medical opinion from Plaintiff's primary care physician, Dr. Gary Morasca, who opined Plaintiff had occasional manipulative limitations and additional physical restrictions. (Doc. 20 at 11-15.) The magistrate judge observed, "The ALJ found that those limitations were neither supported nor consistent with the record." (*Id.* at 13.) The magistrate judge found the ALJ's analysis regarding the supportability of the opinion was correct, because Dr. Morasca did not offer any "narrative explanation" and his "own treatment notes … were not supportive of [the] manipulative limitations." (*Id.* at 14.) Similarly, the magistrate judge determined the ALJ properly considered the consistency factor by addressing the medical evidence, Plaintiff's own allegations, and her work history. (*Id.* at 14-15.)

The magistrate judge concluded "the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards." (Doc. 20 at 15.) Therefore, the magistrate judge recommended the Court deny Plaintiff's motion for summary judgment or remand, grant the request to affirm the agency's determination, and enter judgment in favor of the Commissioner. (*Id*.)

## IV. Objections and Response

Plaintiff contends the findings of the magistrate judge related to step two "should be rejected." (Doc. 21 at 1 [emphasis omitted].) Plaintiff contends the magistrate judge erred in concluding that "the ALJ correctly assessed Dr. Gurshani's opinion, but her interpretation of the opinion is undermined by prevailing precedent." (*Id.* at 2.) According to Plaintiff, the magistrate judge engaged in "cherry picking" in reviewing the record, and "mainly summarize[d] the ALJ's decision and cites to only a few examples of benign findings to scrounge support for the ALJ's bald statements." (*Id.*) Plaintiff also argues the magistrate judge did not "properly assess Plaintiff's arguments." (*Id.*) Plaintiff asserts she "had addressed that Step 2 is *a de minimis* standard and that as Dr. Musacco had noted that Plaintiff was limited to simple, routine tasks, this would result in more restrictive limitations than those listed by the ALJ." (*Id.*) Plaintiff contends "[t]he magistrate judge improperly focused on the step 2 error rather than Plaintiff's notations that she should have been limited to simple, routine tasks had the ALJ properly considered her mental impairment." (*Id.*, emphasis omitted.)

Plaintiff also asserts the Court should reject the magistrate judge's findings related to the medical opinion evidence. (Doc. 21 at 2-3.) Plaintiff indicates: "The Magistrate Judge found that the ALJ properly found that Plaintiff's subjective complaints were not supported. Dkt. No. 20 at 11-15. However, the Magistrate Judge's recommendation is again contraindicated (sic) by prevailing legal precedent and should be rejected." (*Id.* at 2.) She also argues the magistrate judge engaged in "cherry picking" in addressing the medical record, because "the magistrate judge's decision contained a far more in-depth description of the evidence than that contained in the ALJ's decision." (*Id.* at 3.)

The Commissioner filed a response to the objections, asserting the Court should adopt the Findings and Recommendations. (Doc. 22 at 2.) The Commissioner observes that contrary to Plaintiff's argument regarding the analysis, "there is no opinion by a Dr. Gurshani in the record, and neither the Magistrate Judge nor the ALJ addressed such an opinion." (*Id.* at 3.) Similarly, the

4

Commissioner notes that Plaintiff did not challenge the ALJ's findings regarding her subjective symptoms, and the magistrate judge did not address such an issue. (*Id.* at 5.) In addition, the Commissioner notes Plaintiff did not identify any examples of "cherry picking" by the magistrate judge. (*Id.* at 3, 4.) The Commissioner also observes that the magistrate judge found Plaintiff ignored the ALJ's determination that "Dr. Musacco's opinion was not persuasive," and waived any challenge to the ALJ's conclusions that the prior administrative medical findings." (*Id.* at 4.) Finally, the Commissioner argues "a plain reading of the Recommendations belies [the] contention" that the magistrate judge engaged in an improper review of the evidence. (*Id.* at 5.) Thus, the Commissioner asserts the Court should affirm the final decision. (*Id.*)

**V.      Discussion**

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..." 28 U.S.C. § 636(b)(1). If a party files objections, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made." *Id.* A de novo review requires the Court to "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

**A.      Arguments not raised before the Court**

As an initial matter, as the Commissioner asserts, there is not an opinion from Dr. Gurshani in this matter. Similarly, Plaintiff did not make any arguments before the magistrate judge regarding her subjective complaints. (*See generally* Doc. 14.) Consequently, the objections asserting error related to the opinion from Dr. Gurshani and Plaintiff's subjective statements are disregarded.

**B.      Step two determination**

The inquiry at step two is *a de minimus* screening for severe impairments "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153. At step two, a claimant must make a "threshold showing" that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Id.* at 146-47; *see also* 20 C.F.R. § 404.1520(c). For an impairment to be

"severe," it must significantly limit the claimant's physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1520(c).

Plaintiff asserts the ALJ erred in finding her mental impairments were not severe at step two, because "not only was Plaintiff prescribed medications, but a medical professional opined that she had functional limitations." (Doc. 14 at 7.) Specifically, Plaintiff notes that "Dr. Musacco opined that Plaintiff was limited to simple, repetitive tasks." (*Id.*, citing AR 599 [Doc. 11-2 at 604].) Plaintiff contends the error was harmful because "[t]he limitation to simple, repetitive tasks would result in the finding that Plaintiff is unable to perform her past relevant work as an Admit Clerk, given that simple, routine tasks are inconsistent with SVP 4 level work." (*Id.*)

Significantly, as the magistrate judge observed, Plaintiff did not challenge the ALJ's determination that the opinion of Dr. Musacco was "not persuasive." (Doc. 11-2 at 27.) In so finding, the ALJ considered the supportability and consistency of the opinion with other evidence in the record. (*Id.*) Because Plaintiff did not challenge these findings, any challenge as to the ALJ's rejection of the limitations identified by Dr. Musacco was waived. *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address an ALJ's finding where the plaintiff "failed to argue [the] issue with any specificity in his briefing"). Thus, Plaintiff's reliance upon the rejected opinion—both to show error by the ALJ at step two and in determining the RFC— is misplaced. *See, e.g.*, *Smith v. Colvin*, 2015 WL 9023486, at *9 (N.D. Cal. Dec. 16, 2015) ("the ALJ was not required to include properly rejected evidence" in the RFC).

The ALJ considered the medical and testimonial evidence related to Plaintiff's mental impairments, and found Plaintiff had no more than mild limitations in the four functional areas identified in the "Paragraph B" criteria, as set forth in 20 C.F.R., Pt. 404, Subpart P, App. 1 to evaluate the mental impairments of a claimant. (Doc. 11-2 at 26-28.) For example, the ALJ found Plaintiff "routinely denied or was negative for any mental health symptoms on more than one occasion." (*Id.* at 26, citing Exh. 12F/4 [Doc. 11-2 at 645], 13F/7 [Doc. 11-2 at 660], 24F/8 [Doc. 11-2 at 884].) The ALJ also considered Plaintiff's testimony concerning her medications, noting there was no "indication that she is currently taking any psychotropic medications." (*Id.* at 26.) The ALJ also found "little evidence of any subsequent formal mental health treatment such as therapy or other modalities." (*Id.*)

The lack of treatment is a proper consideration by the ALJ in evaluating the severity of a plaintiff's impairments. *See Ivy v. Comm'r of Soc. Sec.*, 2011 WL 2038579, at *10 (E.D. Cal. May 24, 2011) (finding the ALJ's conclusion that the claimant's depression was not severe at step two was supported by the record where the plaintiff did not receive "mental health treatment, nor did he consistently take medications for any psychiatric condition"). Finally, the ALJ considered medical opinions from several other physicians who reviewed the record and found Plaintiff had "a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself." (*Id.* at 26; *see also id.* at 26-27, citing Exh. 1A [Doc. 11-2 at 133-148]; 15F [Doc. 11-2 at 677-687].) Consequently, substantial evidence supports the ALJ's determination at step two that Plaintiff's mental impairments were "nonsevere."

To the extent Plaintiff contends the magistrate judge engaged in "cherry picking" in her discussion (*see* Doc. 21 at 2), the objection is plainly unavailing. Indeed, Plaintiff does not identify any specific evidence she believes the magistrate judge erroneously considered. (*See id.*) The Court declines to speculate as to what evidence Plaintiff believes was "cherry picked" by the magistrate judge. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (observing the Ninth Circuit "has repeatedly admonished" that the court "cannot manufacture arguments" for parties); *see also* Fed. R. Civ. P. 72(b)(2) (requiring any objections to magistrate judge's findings and recommendations to be "specific"). Although Plaintiff contends the evidence concerning her mental health may be interpreted differently, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

### C. Evaluation of a medical opinion

The regulations direct the ALJ to determine how persuasive a medical opinion is according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors showing the medical source's "familiarity with … other evidence in the record or an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5). An ALJ is only required to discuss supportability and consistency, which are the

most important factors "when evaluating the persuasiveness of medical opinions." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)); *see also* 20 C.F.R. § 404.1520c(b)(2) ("we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the [remaining] factors in paragraphs (c)(3) through (c)(5) of this section…").

The supportability inquiry is an assessment of "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods*, 32 F.4th at 791-792 (internal quotation marks omitted). The regulations provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). On the other hand, consistency compares an opinion with other evidence in the record to determine its persuasiveness. *See Woods*, 32 F.4th at 792. With the consistency factor, the regulations explain: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The Ninth Circuit observed that an ALJ must explain how both the supportability and consistency factors were considered, and "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Plaintiff notes that Dr. Morasca, her primary care provider, opined she was "limited to a less than sedentary range of work and could only perform manipulative actions occasionally." (Doc. 14 at 8, citing AR 614-19 [Doc. 11-2 at 619-624].) The ALJ considered the opinion of Dr. Morasca, and concluded it was "not persuasive." (Doc. 11-2 at 33-34.) In so doing, the ALJ considered the supportability of the opinion, finding "no narrative explanation to provide a nexus between the claimant's impairments and the overly restrictive functional limitations identified." (Doc. 11-2 at 33.) For example, the ALJ found there was nothing to explain why Plaintiff's trigger finger diagnosis

resulted in "occasional manipulative restrictions." (*Id.*, citing Exh. 9F/4. [Doc. 11-2 at 631].) Although Plaintiff contends "the ALJ did not cite to any records that indicated Plaintiff was less limited than Dr. Morasca opined" (Doc. 14 at 9), the assertion is contradicted by the record. The ALJ indicated he reviewed the treatment notes and found that they "do not support the conclusory assessments." (*Id.*, citing Exhs. 10F, 13F [Doc. 11-2 at 629-40, 655-66].) Because the ALJ found Dr. Morasca did not provide a nexus between Plaintiff's impairments to the physical limitations identified—or otherwise link the diagnoses to the limitations identified—the ALJ properly considered the supportability of the opinion. *See Woods*, 32 F.4th at 791-792; *see also Cuevas v. Comm'r of Soc. Sec.,* 2021 WL 363682 at *10 (S.D.N.Y. Jan. 29, 2021) (the supportability inquiry is "geared toward assessing how well a medical source supported and explained" the opinion). As the Ninth Circuit previously explained, an ALJ "need not accept the opinion of any physician … if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Further, the ALJ considered the consistency of the opinion "with the longitudinal record." (Doc. 11-2 at 33-34.) For example, the ALJ found the manipulative restrictions identified were "not consistent" with objective findings, including Plaintiff's "4+/5- out of 5 grip strength in her hands and little other evidence of ongoing deficits." (*Id.* at 33.) The ALJ also found "the restrictions with respect to operation of foot controls are not supported, particularly given evidence of the 90% improvement with treatment for her nonsevere plantar fasciitis as well as observations of normal gait with the ability to stand on heels and toes." (*Id.* at 33-34.) Further, the ALJ found the identified restrictions related to cardiac impairments were "not consistent with evidence of [Plaintiff's] treating history." (*Id.* at 34.) Finally, the ALJ found Dr. Morasca's opinion that the "limitations have been present since 2009" was "not consistent with the claimant's own allegations and her work history." (*Id.*) The identified evidence supports the ALJ's analysis and finding that the opinion of Dr. Morasca was not persuasive. *See, e.g., Darling v. Kijakazi*, 2023 WL 4103935, at *1 (9th Cir. June 21, 2023) (finding an ALJ permissibly considered a claimant's work activity in addressing the consistency factor); *Ferreira v. Kijakazi*, 2023 WL 2815735, at *4 (E.D. Cal. Apr. 5, 2023) (a finding that "opined limitations were not consistent with the treatment record… expressly invokes the consistency factor"); *Bruno v. Comm'r of Soc. Sec.*, 2021 WL 649477, at *8 (N.D. Oh. Dec. 3, 2021) (finding an "ALJ applied the proper legal

standards" with the consistency factor by finding manipulative and other physical restrictions identified were not consistent with the objective findings that the claimant had "4/5 grip strength… and a normal gait"). Accordingly, the ALJ properly considered the supportability and consistency factors in evaluating the opinion of Dr. Morasca.

### VI.     Conclusion and Order

According to 28 U.S.C. § 636(b)(1), this Court performed a *de novo* review of this case. Having carefully reviewed the entire matter—including Plaintiff's objections and Defendant's response—the Court concludes the Findings and Recommendations are supported by the record and proper analysis. The administrative decision must be affirmed because the ALJ applied the proper legal stands, and substantial evidence supports the findings. *See Sanchez v. Sec'y of Health & Human Serv.,* 812 F.2d 509, 510 (9th Cir. 1987). Thus, the Court **ORDERS**:

1. The Findings and Recommendations (Doc. 20) are **ADOPTED**.
2. Plaintiff's motion for summary judgment and appeal (Doc. 14) is **DENIED**.
3. Defendant's request to affirm the administrative decision (Doc. 18) is **GRANTED**.
4. The Clerk of Court is directed to terminate any pending motions; enter judgment in favor of defendant Leland Dudek, Acting Commissioner of Social Security, and against Plaintiff Esther Garcia; and to close this case.

IT IS SO ORDERED.

Dated:     **March 17, 2025**

UNITED STATES DISTRICT JUDGE